UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBIE PACHECO DYER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No.  13-cv-02858-JST <br><br> **ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Re: ECF No. 35 |

Before the Court is Plaintiffs Bobbie Pacheco Dyer and Patricia Stallworth's Motion for Preliminary Approval of Settlement.  ECF No. 35.  Plaintiffs' operative complaint, FAC, ECF No. 27, alleges that Defendant Wells Fargo Bank, N.A. failed to pay commissions to the proposed class of Branch Sales Managers and Home Mortgage Consultants of the Wells Fargo Home Mortgage Division (WFHM) as required by WFHM's Incentive Compensation Plan.  The Court will grant the motion, conditionally certify the settlement class, appoint class counsel and the class representative, direct the distribution of class notice, and make a preliminary determination that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

## I.   BACKGROUND

Plaintiff Dyer was employed by WFHM as a Producing Branch Sales Manager.  FAC ¶ 3.  Plaintiff Stallworth was employed as a Home Mortgage Consultant.  Id. ¶ 4.  Plaintiffs allege that since 2011, Producing Branch Sales Managers have been compensated with a base salary, monthly commissions, and certain bonuses.  A Standard Commission Schedule determines the commission rate, depending on how much mortgage business the employee secures.  Id. ¶ 18–19.  Home Mortgage Consultants are paid according to a similar schedule.  According to Plaintiffs, "the vast majority of Producing Sales Branch Managers and Home Mortgage Consultants perform at a level

1  which entitles them to 63 bps" commissions, or .63% of the mortgage business secured by the

2  employee.  Id. ¶ 22.

3        The WFHM Incentive Compensation Plan overrides the commission schedule where it sets

4  forth a specific commission rate.  Plaintiffs allege that the Plan provides for special commissions

5  for some types of mortgages, and for commissions based on the commission schedule for others.

6  For example, Plaintiff Dyer alleges that he secured "WFHM loans of Freddie Mac to Freddie Mac

7  Relief Refinance Mortgage refinanced loans and WFHM loans of Freddie Mac to Freddie Mac

8  Relief Refinance Mortgage/Three (3) Step Express refinanced loans," which, under the Plan,

9  entitled him to commissions according to the commission schedule.  Id. ¶ 27–29.  However,

10 Plaintiff Dyer alleges that he was paid a flat rate of 43bps on certain loans despite being entitled to

11 a higher rate under the commission schedule.  Plaintiff Stallworth likewise alleges that she was

12 paid a flat rate of 43bps when she was entitled to more under the schedule.

13       Wells Fargo asserts several contract defenses, and argues that Plaintiffs and the proposed

14 class were required to pursue a dispute resolution procedure set up by the Plan within sixty days,

15 and thus, Plaintiffs' claims are barred.

16       After the Rule 26 conference, the parties agreed to postpone the bulk of discovery in favor

17 of mediation.  In connection with the mediation efforts, Wells Fargo provided discovery responses

18 related only to the named Plaintiffs' claims and the size and scope of the class.  Plaintiffs also

19 conducted a Rule 30(b)(6) deposition, and Wells Fargo took Dyer and Stallworth's depositions.

20 The parties engaged in a full-day, in-person mediation on January 23, 2014, at which the named

21 Plaintiffs were present, and which resulted in the execution of a memorandum of understanding

22 memorializing the terms of the parties' settlement.  Incentive awards, attorneys' fees, and costs

23 were negotiated after the parties had reached agreement on the essential terms of the underlying

24 settlement.  In addition, following the mediation, Wells Fargo conducted an internal damages

25 analysis, the results of which it provided to Plaintiffs.

26       The Settlement Agreement defines a class of

27         All home mortgage employees of Wells Fargo Bank, N.A. who were
           paid 43 basis points ("bps"), but who otherwise would have been
28

United States District Court
Northern District of California

2

paid standard commission rates, for originating Wells Fargo to Wells Fargo specialty refinance loans under the Home Affordable Refinance Program (HARP), Freddie Mac to Freddie Mac Relief, and Fannie Mae to Fannie Mae Refi Plus programs, from April 1, 2011 to January 1, 2013, excluding all employee and partner referral loans.

Wells Fargo will create a settlement fund of $14,743,101.  The fund amount represents 32.7 percent of the amount Plaintiffs allege the settlement class would be entitled to should Plaintiffs prevail at trial, in addition to attorneys' fees, costs, and expenses.  Class members will automatically receive a proportional share of the fund, less attorneys' fees, costs, and expenses. The proportional share of the fund belonging to class members who opt out of the class will be returned to Wells Fargo.  Plaintiffs intend to request attorneys' fees, costs, and expenses in the amount of 25 percent of the settlement fund amount, as well as incentive awards of $15,000 each for Dyer and Stallworth.

## II.     CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, Plaintiff must demonstrate that the four requirements of 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ____, 131 S.Ct. 2541, 2551 (2011)).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is met.  Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met.  See Wal–Mart, 131 S.Ct. at 2551.

### A.     Rule 23(a)(1) — Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

3

1    impracticable." Numerosity is satisfied here because there are approximately 7,800 members of

2    the proposed settlement class.

3        In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have

4    recognized that 'in order to maintain a class action, the class sought to be represented must be

5    adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D.

6    192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).

7    "[A] class definition is sufficient if the description of the class is 'definite enough so that it is

8    administratively feasible for the court to ascertain whether an individual is a member.'" Id.

9    (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

10       The Court finds that the class definition contained in the Settlement Agreement satisfies

11   this requirement.

12       **B.    Rule 23(a)(2) — Commonality**

13       A Rule 23 class is certifiable only if "there are questions of law or fact common to the

14   class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common]

15   question will do." Wal-Mart, 131 S. Ct. at 2556 (internal quotations and quotation marks

16   omitted). However, the common contention "must be of such a nature that it is capable of

17   classwide resolution — which means that determination of its truth or falsity will resolve an issue

18   that is central to the validity of each one of the claims in one stroke." Id. at 2551. "'What matters

19   to class certification . . . is not the raising of common "questions" – even in droves – but rather the

20   capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the

21   litigation.'" Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof,

22   84 N.Y.U. L. Rev. 97, 131–132 (2009)).

23       The Court finds that the proposed class satisfies the commonality requirement because, at a

24   minimum, the contract interpretation issues presented by Plaintiffs' claims and Wells Fargo's

25   defenses apply to the class as a whole.

26       **C.    Rule 23(a)(3) — Typicality**

27       In certifying a class, courts must find that "the claims or defenses of the representative

28   parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose

United States District Court
Northern District of California

4

of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court finds that the proposed class representatives, Plaintiffs Dyer and Stallworth, are typical of the class they seek to represent because they allege they suffered the same injury, in the same manner, as the proposed class. Moreover, the claims of the entire class are based primarily on the uniform conduct of Wells Fargo in its interpretation of its compensation plan.

### D.      Rule 23(a)(4) — Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prod.s v. Windsor, 521 U.S. 591, 626, n.20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158, n.13 (1982)). Among other functions, these requirements serve as ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158, n.13. Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

There is no evidence in the record suggesting that the proposed class representatives or proposed class counsel have a conflict of interest with other class members. The Court finds that proposed class counsel and the named Plaintiffs have and will continue to prosecute this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

United States District Court
Northern District of California

5

### E.    Rule 23(b)(3) — Predominance and Superiority

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623.  "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

Here, the Court finds that the common questions raised by Plaintiffs' claims predominate over any questions affecting only individual members of the proposed class.  In particular, Plaintiffs allege that Wells Fargo improperly interpreted its compensation plan uniformly, on a national basis, with respect to each member of the proposed class, in a manner that resulted in under-compensation.  All class members are alleged to have been subject to the same agreements.  Wells Fargo assets the same defenses against the proposed class as a whole.  The predominance requirement is therefore satisfied.

Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Id., 150 F.3d at 1023.  Here, because common legal and factual questions predominate over individual ones, the Court finds that the judicial economy achieved through common adjudication makes a class action superior to the alternative procedures for adjudicating the claims of the members of the proposed class.

*          *          *

Because each element of Rules 23(a) and 23(b)(3) are satisfied, the Court finds that conditional certification of the proposed settlement class defined below is appropriate:

All home mortgage employees of Wells Fargo Bank, N.A. who were

paid 43 basis points ("bps"), but who otherwise would have been paid standard commission rates, for originating Wells Fargo to Wells Fargo specialty refinance loans under the Home Affordable Refinance Program (HARP), Freddie Mac to Freddie Mac Relief, and Fannie Mae to Fannie Mae Refi Plus programs, from April 1, 2011 to January 1, 2013, excluding all employee and partner referral loans.

**F.      Appointment of Class Representative and Class Counsel**

Because the Court finds that named Plaintiffs Dyer and Stallworth meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)   counsel's knowledge of the applicable law; and
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel have thus far vigorously prosecuted this action by investigating the potential claims, propounding and reviewing discovery, defending Plaintiffs' depositions, taking a Rule 30(b)(6) deposition of Wells Fargo, negotiating the present settlement at arms-length in an all-day mediation, and briefing the instant motion for preliminary approval.  In addition, Plaintiff's counsel has significant prior experience prosecuting class actions.  For these reasons, the Court will appoint John Yanchunis as Lead Class Counsel and the remaining Plaintiffs' counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g).

**III.     PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts generally

employ a two-step process in evaluating a class action settlement.  First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class.  <u>See</u> Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d at 1276.  Where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "'within the range of possible approval.'"  <u>In re Tableware Antitrust Litig.</u>, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting <u>Schwartz v. Dallas Cowboys Football Club, Ltd.</u>, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001)).  <u>See also</u> MCL, 4th § 21.632.  (courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.").  Second, courts must hold a hearing pursuant to Federal Rule of Civil Procedure 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."  Here, Plaintiff asks the Court to take the first step in granting preliminary approval to the proposed settlement.

Preliminary approval of a settlement is appropriate if "'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  <u>In re Tableware</u>, 484 F. Supp. 2d at 1079 (quoting Manual for Complex Litigation, Second § 30.44 (FJC 1985)).  The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations

8

to the class.  Hanlon, 150 F.3d at 1027) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness.  Id.  Courts do not have the ability to "delete, modify, or substitute certain provisions" because the settlement "must stand or fall in its entirety."  Id.

    Here, the Court finds that the Settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  In re Tableware, 484 F. Supp. 2d at 1079.

    First, nothing in the record suggests the settlement negotiation process was collusive.  The settlement was reached at arms-length with the use of a professional mediator.

    Second, the settlement amount is adequate when compared to the total potential damages in the case.  Plaintiffs estimate that class members will receive 32.7 percent of the total damages they would receive at trial should they prevail.  The Court finds that a net recovery of 32.7 percent is fair, adequate, and reasonable in light of the strength of Plaintiffs' case, and the risk, expense, complexity, and likely duration of this litigation.

    Third, the stage of the proceedings weighs in favor of approval.  Though the settlement was reached prior to class certification, the parties engaged in adequate discovery: Plaintiffs' depositions were taken, Plaintiffs took a Rule 30(b)(6) deposition of Wells Fargo, and the parties exchanged document discovery related to mediation.

    Fourth, experienced counsel for both parties endorse the settlement.

1  Fifth, no governmental actor is relevant to this action, rendering that factor immaterial to

2  the settlement approval process.

3  Sixth, the Court must wait until the final approval hearing to determine the reaction of the

4  class members to the settlement. The named Plaintiffs were present at the mediation and favor

5  approval.

6  Finally, the Court finds the parties' agreement with respect to attorneys' fees and service

7  enhancement awards for named Plaintiffs Dyer and Stallworth falls "within the range of possible

8  approval." The Court will evaluate the requests for fees and service enhancement awards at the

9  final approval hearing, after Plaintiffs' counsel file their motion for fees and costs, and the class

10  has an opportunity to object.

11  For the foregoing reasons, the Court will preliminarily approve the class action settlement.

12  **IV.  CONDITIONAL APPROVAL OF CLASS NOTICE PLAN**

13  The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

14  process. "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

15  litigation, whether in person or through counsel." The notice must be "the best practicable,"

16  "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

17  the action and afford them an opportunity to present their objections." Philips Petroleum Co. v.

18  Shutts, 472 U.S. 797, 812 (1985) (citations omitted). "The notice should describe the action and

19  the plaintiffs' rights in it." Id. Rule 23 provides: "The notice must clearly and concisely state in

20  plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

21  certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

22  appearance through an attorney if the member so desires; (v) that the court will exclude from the

23  class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and

24  (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

25  Additionally, "an absent plaintiff [must] be provided with an opportunity to remove

26  himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to

27  the court." Id.

28  The parties propose to use Rust Consulting, Inc. as the claims administrator for the class.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Rust will provide notice, calculate awards, process requests for exclusion and objections, mail

2  class members their settlement awards, issue tax reporting forms, an provide weekly updates to

3  counsel for the parties.

4        Using employees' last known home addresses, the claims administrator will perform an

5  address update and mail class notice.  Class members will have forty-five days from the date of

6  mailing to postmark any objections or request for exclusion.  The administrator will perform skip-

7  traces on returned mail in order to re-mail class notice to updated addresses.

8        The Court finds the parties' notice plan comports with due process requirements.  In

9  addition, the Court will approve the class notice subject to the following alteration: the phrase

10  "and timely served on the Class Counsel and the attorneys for Wells Fargo listed in Section V

11  above, to be considered by the Court" shall be deleted from the last sentence of Section VII of the

12  proposed class notice, as filing of an objection on the docket in this case constitutes service on the

13  parties through the Court's electronic case filing system.  Class Counsel's address shall remain on

14  the class notice, however, for the benefit of class members seeking more information regarding the

15  settlement.

16  **V.    CONCLUSION**

17        For the foregoing reasons, and subject to the alteration of the class notice described above,

18  the Court hereby:

19        1.    certifies for settlement purposes the class defined above;

20        2.    appoints Plaintiffs Dyer and Stallworth as Class Representatives, John Yanchunis

21  as Lead Class Counsel, and the remaining Plaintiffs' counsel as Class Counsel;

22        3.    grants preliminary approval to the parties' class action settlement; and

23        4.    directs distribution of the proposed class notice and claim form in the manner

24  agreed upon by the parties.

25        Class Counsel shall file their motion for attorneys' fees and costs by no later than two

26  weeks prior to the end of the period for class members to object to the settlement.

27        The Court will hold a final approval hearing and a hearing on Class Counsel's motion for

28  attorneys' fees on August 28, 2014, at 2:00 p.m., in Courtroom 9, 19th Floor, 450 Golden Gate

Avenue, San Francisco, California. Class Counsel's memorandum of points and authorities in support of final approval, and responding to any objections, shall be filed by July 31, 2014.

      **IT IS SO ORDERED.**

Dated: May 12, 2014

_____
JON S. TIGAR
United States District Judge