UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBIE PACHECO DYER, et al.,<br>Plaintiffs,<br>v.<br>WELLS FARGO BANK, N.A.,<br>Defendant. | Case No. 13-cv-02858-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS**<br><br>Re: ECF Nos. 43, 44 |

Two motions are now pending in this putative class action for breach of contract and related claims. First, Plaintiffs Bobbie Pacheco Dyer and Patricia Stallworth move for an order granting final approval of the parties' settlement agreement. ECF No. 44. No one has objected to the settlement. Second, Plaintiffs move for an award of attorneys' fees, litigation costs, and a service enhancement award to Ms. Dyer and Ms. Stallworth as class representatives. ECF No. 43. The Court held a final fairness hearing on August 28, 2014.

For the reasons set forth below, the Court will GRANT the motion for final approval of the settlement, GRANT the request for an award of attorneys' fees, and APPROVE the award of modified service enhancement awards to Ms. Dyer and Ms. Stallworth. The Court will DENY WITHOUT PREJUDICE the request for costs.

**I.  BACKGROUND**

This is a class action brought on behalf of Plaintiffs and all other Producing Branch Sales Managers or Home Mortgage Consultants employed by Wells Fargo Home Mortgage during the class period. ECF Nos. 1, 27. Plaintiffs seek compensation for unpaid commissions Wells Fargo allegedly failed to pay in violation of its compensation plans. ECF No. 27 at 2. A more detailed description of the facts and claims at issue in this action, as well as the action's procedural history,

can be found in the Court's May 12, 2014 order, ECF No. 41.

By order dated May 12, 2014, the Court (1) granted preliminary approval of the parties' proposed settlement agreement and conditionally certified the putative class for settlement purposes; (2) appointed Plaintiffs Dyer and Stallworth as class representatives; (3) appointed John Yanchunis as lead class counsel and the remaining Plaintiffs' counsel as class counsel; and (4) approved the parties' proposed notice and claim form.

### A. Settlement Agreement

The settlement agreement defines a class of

> All home mortgage employees of Wells Fargo Bank, N.A. who were paid 43 basis points ("bps"), but who otherwise would have been paid standard commission rates, for originating Wells Fargo to Wells Fargo specialty refinance loans under the Home Affordable Refinance Program (HARP), Freddie Mac to Freddie Mac Relief, and Fannie Mae to Fannie Mae Refi Plus programs, from April 1, 2011 to January 1, 2013, excluding all employee and partner referral loans.

ECF No. 35 at 11.

Pursuant to the agreement, Wells Fargo will create a settlement fund of $14,743,101, which represents 32.7% of the amount Plaintiffs allege the class would be entitled to if Plaintiffs prevailed at trial. Id. at 12. The share of the fund belonging to class members who opt out of the class will revert to Wells Fargo.[1] Id. Plaintiffs will release Wells Fargo from all claims arising from the factual allegations in the complaint. ECF No. 35-1, ¶¶ 6-7, 26.

Further, Wells Fargo will pay the employer's portion of payroll taxes resulting from payments to class members; payroll taxes will not be deducted from the settlement fund. ECF No. 35 at 12. Wells Fargo "is also separately responsible for payment of the costs of notice to the

---

[1] The provision here is not a typical reversion clause, in which money allocated to a class member, but unclaimed by her, reverts to the Defendant. The Court has previously expressed its concern about such clauses. See, e.g., Cordy v. USS-Posco Indus., No. 12-CV-00553-JST, 2013 WL 4028627 (N.D. Cal. Aug. 1, 2013). With those kinds of reversion clauses, there is a risk that the Defendant will retain funds that correspond to an injury suffered by a class member. Here, however, the funds reverting to the Defendant correspond to persons who have opted *out* of the class, such that the funds no longer have a connection to the dispute resolved by this litigation.

class and administration of the settlement."[2] Id. Plaintiffs also seek an award of attorneys' fees in the amount of 25% of the settlement fund. Id. Lastly, Plaintiffs request incentive awards of $15,000 each for Ms. Dyer and Ms. Stallworth, which Wells Fargo would pay apart from the settlement fund. Id. at 12-13.

### B. Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S. Code § 1332(d).

## II. FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. Pro. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id.

### B. Analysis

As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

---

[2] Plaintiffs have not separately asked the Court to order Wells Fargo to pay the claims administrator the $77,979.76 the administrator requests in fees. See ECF No. 44-2. If they wish to do so, Plaintiffs may file a motion, within 10 days of the date of this Order, asking the Court to order Wells Fargo to do so. Any motion for administration fees should include documentation—similar to the documentation required to support the request for attorneys' fees and costs—to support the claimed administration expenses; the bald assertion that $77,979.76 is owed to the claims administrator, see id., is inadequate for this purpose.

3

### 1. Adequacy of notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

The Court previously approved the parties' proposed plan for providing notice to the class. ECF No. 41 at 10-11. The parties have shown that the class administrator has fulfilled the notice plan by preparing the class list, mailing notice to class members via first class mail, and performing address traces to re-mail the notice to class members whose mail was returned undeliverable. ECF No. 44-2, ¶¶ 7, 9-10. Only thirty-three (.38%) of direct notices were returned a second time and remained undeliverable due to the inability to identify a current address. Id. ¶ 10. As provided in the notice, lead class counsel posted on its website the parties' Joint Stipulation of Settlement and Release and other informational materials, such as court documents and answers to frequently asked questions. ECF No. 44 at 11. In light of the foregoing, the Court finds that the parties have sufficiently provided the best practicable notice to class members. See Boring v. Bed Bath & Beyond, No. 12-CV-05259-JST, 2014 WL 2967474, at *1 (N.D. Cal. June 30, 2014) (finding adequate notice where parties implemented approved notice plan and only "twenty-seven of the 1,374 class notices were returned undeliverable after a second attempt and a skip trace.").

### 2. Fairness, adequacy, and reasonableness

#### a. Strength of Plaintiffs' case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Plaintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims in light of the uncertainties surrounding class certification, calculation of damages, and Wells Fargo's numerous contractual defenses. ECF No. 44 at 14-15. These weaknesses weigh in favor of approving the settlement. See Moore v. Verizon

Commc'ns Inc., No. C 09-1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in establishing class certification, liability, and damages).

### b. Risk of continued litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation. ECF 44-1, Ex. 2, ¶ 12. Wells Fargo would have "strongly contested the suitability of the case for class certification." Id. Furthermore, if the case proceeded, Wells Fargo would have introduced evidence against Plaintiffs' contractual interpretation during the scheduled twenty-day trial. ECF No. 44 at 17-18. Even if Plaintiffs succeeded in class certification and trial, Wells Fargo would probably appeal any adverse decision. Id.

### c. Risk of maintaining class-action status

Although Plaintiffs believe they have a strong case, class counsel acknowledges that maintaining class certification would present "a large hurdle to recovery for the Class." ECF No. 44-1, ¶ 12. This is because "many of the contracts at issue did not contain choice of law clauses, [thus] it was possible that the laws of the numerous states would be deemed to control the claims of different class members, raising doubts about the manageability of the case on a class-wide basis." ECF No. 43-2, ¶ 26(e). The potential difficulties associated with maintaining class certification weigh in favor of approving the settlement. See McKee Foods Corp., 716 F. Supp. 2d at 851 (holding that this factor supports approving a settlement when both parties acknowledge the possibility of decertification).

### d. Settlement amount

The proposed settlement represents approximately one-third of what class members could have obtained had they succeeded at trial. ECF No. 44-1, ¶ 13; ECF No. 44, at 19. Although this amount is not the maximum amount the class members could have recovered if they had prevailed

at trial, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). Because of the uncertainties attached to the litigation of these claims, the Court finds that a settlement based on that fraction is fair and reasonable. See Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding a settlement worth 25 to 35 % of best-case recovery reasonable), aff'd, 331 F. App'x 452 (9th Cir. 2009).

### e. Extent of discovery

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

Here, class counsel asserts the parties "had a clear view of the strengths and weaknesses of their respective cases and had sufficient information to make an informed decision about settlement." ECF No. 44 at 21. The parties requested, propounded, and reviewed numerous discovery documents; conducted and participated in depositions; interviewed Wells Fargo employees; and prepared for and engaged in a four-day mediation. Id. at 12, 20-21. The Court is persuaded that the parties conducted sufficient discovery to make an informed decision regarding the adequacy of the settlement. See In re Omnivision, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling the action because they propounded and reviewed discovery, took depositions, briefed motions, and engaged in mediation).

### f. Counsel's experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." Id. at 1043 (citation omitted).

Here, lead class counsel, who has demonstrated that he is informed about the current dispute and class actions generally (as a result of his nearly twenty years of experience in the field), asserts the settlement "is an excellent result." See ECF No. 43-1, ¶ 1; ECF No. 44 at 22.

No party has provided the Court any evidence to contradict this assertion. In light of the foregoing, class counsel's endorsement weighs in favor of approving the settlement. See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement to be presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

### g. Reaction of the class

Class members' positive reaction to a settlement weighs in favor of settlement approval; "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Id. (citation omitted).

As of August 21, 2014, of 8,695 class members, only three (.03%) have opted out of the settlement, and as of today's date none have filed an objection. ECF No. 45-1. Given the lack of objections and few opt-outs, the settlement appears favorable to class members. See, e.g., McKee Foods, 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Vill. LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement with forty-five objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively).

After reviewing these factors, the Court finds the settlement fair, reasonable, and adequate, and thus GRANTS Plaintiffs' motion for final approval of the settlement.

## III. ATTORNEYS' FEES

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id.

"Because the benefit to the class is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citation omitted). In considering whether to adjust the presumptive 25% award upward, district courts may take into account "[e]xceptional results," the risk of non-recovery, any "benefits beyond the case settlement fund" that counsel achieved for the class, counsel's "reasonable expectations . . . based on the circumstances of the case and the range of fee awards out of common funds of comparable size," and any unusual burdens borne by counsel. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).

"Even though a district court has discretion to choose how it calculates fees . . . it abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward." In re Bluetooth, 654 F.3d at 944 (citation and internal quotations omitted). "Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation," the Ninth Circuit has "also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." Id. (citations omitted).

**B.     Analysis**

The settlement fund totals $14,743,101. ECF No. 43 at 1. Class counsel seeks the standard 25% benchmark in attorneys' fees, totaling $3,685,775.25. Id. This fee would include costs and expenses, so actually it represents slightly less than 25% of the fund. Id. at 8.

Initially, Plaintiffs filed only very general information in support of their motion for fees. See ECF No. 43-1, ¶¶ 19, 20. As a result, the Court could not cross-check the percentage method with the lodestar method of calculating fees to ensure the requested fee amount was reasonable. See Hensley v. Eckerhard, 461 U.S. 424, 434 (1983) ("The party seeking an award of fees should

submit evidence supporting the hours worked"); Otey v. CrowdFlower, Inc., No. 12-CV-05524-JST, 2014 WL 1477630, at *8-9 (N.D. Cal. Apr. 15, 2014) (holding that the court could not find proposed attorneys' fees reasonable because plaintiffs failed to provide supporting documentation for hours worked); Weeks v. Kellogg Co., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *33 (C.D. Cal. Nov. 23, 2013) ("Although summaries [of hours worked] may be adequate . . . the submissions in this case cannot be characterized as 'summaries.' They are better described as conclusory statements regarding the number of hours expended, as they provide no description whatsoever of the tasks performed, the hours spent on various types of task, or the relation of those tasks to the litigation.").

At the hearing on the instant motion, the Court asked Plaintiffs' counsel to submit more specific records of hours worked on the case; the Court did not require actual billing statements, but asked Plaintiffs' counsel to at least provides summaries of hours worked on particular categories of tasks so that the Court could evaluate whether the hours worked were reasonable. Cf. Covillo v. Specialtys Cafe, No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [C]ourts may rely on summaries submitted by the attorneys and need not review actual billing records.") (quotation omitted)). Plaintiffs' counsel has submitted supplemental briefs and a declaration in response to the Court's request. See ECF Nos. 47-50.

The briefs and declaration adequately support the amount of requested fees. The first supplemental brief contains charts that break down, by individual attorney for whom fees are claimed, the attorney's work on this case by general category, and by specific types of tasks performed within that category, and then provides the total number of hours worked in each category. See ECF No. 47. Similarly, the Declaration of Clayeo C. Arnold, ECF No. 50, provides charts that indicate which attorneys and support staff worked on which categories of tasks related to this case, those individuals' professional experience, and the number of hours worked on each category of task. The second supplemental brief (as amended) provides hourly rates charged by attorneys who are situated similarly to class counsel. See ECF No. 49 at 1-2. It also provides

caselaw indicating that the hourly rate class counsel claims here is within the range that other Northern District judges have approved for attorneys in the same field and with the same level of experience. Id. at 2-3.

Based on the total number of hours claimed, which Plaintiffs have adequately substantiated, the lodestar multiplier is 2.83. ECF No. 43 at 21. A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0-4.0. See Vizcaino, 294 F.3d at 1051 & n.6. Given the complexity and duration of this litigation, the results obtained for the class, and the risk counsel faced in bringing the litigation, the Court finds the 2.83 multiplier appropriate. See id. at 1051.

Because class counsel has provided documentation substantiating the fees they request, and the Court has verified under both the lodestar method and the percentage-recovery method that the amount of requested fees is reasonable, the Court hereby GRANTS Plaintiffs' motion for attorneys' fees.

**IV. EXPENSES**

**A. Legal Standard**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).

**B. Analysis**

The Court cannot reimburse class counsel for costs and expenses because counsel has provided no documentation supporting the claimed expenses.[3] Without documentation, the Court cannot determine whether the claimed expenses are the type normally charged to a paying client.

Accordingly, the Court "directs Plaintiffs to file an itemization listing the expenses by category and the total amount advanced for each category" within ten days of the issuance of this order so the Court may "assess whether the expenses are reasonable." Wren v. RGIS Inventory

---

[3] The Plaintiffs only submitted the dollar amount spent by each class counsel firm. For example, Morgan & Morgan Complex Litigation Group's only documentation for costs is as follows: "Expenses $46,309.84." ECF No. 43-1, ¶ 20.

10

Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). Until the Court reviews this supplemental material, it will reserve $86,341.48 from the settlement fund, which it may later award to counsel. See id. (reserving requested attorneys' costs and expenses where attorneys failed to provide itemized documentation in support of the request, and granting costs and expenses upon the plaintiffs' submission of the requested documentation).

Class counsel's motion for expenses and costs is DENIED WITHOUT PREJUDICE.

## V. INCENTIVE AWARDS

### A. Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-59 (internal citation omitted). Further,

> The district court must evaluate [incentive] awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.

Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). And district courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

### B. Analysis

Plaintiffs request enhancement awards of $15,000 each to Ms. Dyer and Ms. Stallworth. ECF No. 43 at 23. This is more than typical enhancement awards in this Circuit, where $5,000 is presumptively reasonable. See Harris, 2012 WL 381202, at *7 ("Several courts in this District

11

have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (citations omitted).

Plaintiffs assert $15,000 is appropriate because of the class representatives' significant contributions and personal sacrifices for the benefit of the class. See ECF No. 43 at 24 & Ex. 2 at 12. For example, Wells Fargo deposed Ms. Dyer; she participated in a four-day mediation, which required her to travel from Florida to California and miss work; and she spent more than 200 hours assisting in the case. ECF No. 35-5, Ex. E, ¶¶ 6-8. Ms. Stallworth also devoted many hours to assisting class counsel; prepared for and attended a deposition; and attended the four-day mediation, which caused her to miss work and her child for whom she is the sole caregiver. ECF No. 35, Ex. F, ¶¶ 7-9. Lastly, Plaintiffs assert that Ms. Stallworth and Ms. Dyer "risked their professional reputation as well as the possibility of retaliation," because they both continue to work in the mortgage industry. ECF No. 43 at 24.

While the Court acknowledges that Ms. Dyer and Ms. Stallworth invested significant time and energy and suffered some risk to their professional reputations by participating in this action as class representatives, the award is disproportionate to the average class member's recovery and the relatively short duration of the litigation.

To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards. In Burden v. SelectQuote Insurance Services, for example, the court rejected a $10,000 enhancement award for class representative Burden. No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013). Although Mr. Burden was deposed twice, attended three settlement conferences, and spent eighty hours working on the case, "the $10,000 incentive award is nearly three times the largest amount paid to any class member, and even $5,000 exceeds the range of the class members settlements," which ranged between $1,850 and $3,335. Id. Rather than a $10,000 enhancement award, the court granted Mr. Burden $5,000 for his efforts. Id.; see also Wren, 2011 WL 1230826, at *36-37 (approving $5,000 awards to each of twenty-four class representatives from a $27 million settlement fund; even though the majority received less than $5,000, many

12

class members received more than $5,000); Ko v. Natura Pet Prods., Inc., No. C 09-02619 SBA, 2012 WL 3945541, at *14-15 (N.D. Cal. Sept. 10, 2012) (denying a $20,000 enhancement award request, and instead awarding $5,000; though class representative expended approximately 100 hours and attended mediation, the average award to class members was $35).

Courts will, however, grant an award that exceeds $5,000 when warranted. See, e.g., Harris, 2012 WL 381202, at *7-8 (granting $12,500 award, rather than $20,000 requested from a $13 million settlement fund; though the average payment was approximately $100, the class representative signed a broader general release than did her fellow class members, spent more than 100 hours on the litigation, had her friends and family subpoenaed, and was compelled to release private information); Boring, 2014 WL 2967474, at *3 (holding that $7,500 was a reasonable enhancement award when average payment to class members was approximately $170.83; class representative traveled to, and attended mediation, risked backlash from defendant (his employer), contributed a significant amount of time and energy to the litigation, and signed a broader release than did other class members).

The $15,000 award requested here is far greater than the average payment to a class member, as was the case in Burden.[4] Ms. Dyer and Ms. Stallworth attended depositions, traveled to mediation, and contributed a significant amount of their own personal time, as had Mr. Burden, who only received an award of $5,000. This factor weighs against $15,000 awards to Ms. Dyer and Ms. Stallworth.

Ms. Dyer, however, contributed more than twice the hours than did Mr. Burden and the class representative in Harris, who was awarded $12,500. On the other hand, unlike in Boring and

---

[4] Plaintiffs have not specified the average payment that each class member can expect to receive; the Court could deny their request on this basis alone. See Otey, 2014 WL 1477630, at *10 ("The Court cannot conclude that the requested awards are reasonable, however, because Plaintiffs do not provide any information as to how much money each class member is expected to receive, or what the average recovery for each class member will be.") (citation omitted). But the Court has calculated its own estimate: although each class member will receive a different payment according to "the actual impact on each individual Class Member's commission rates," ECF No. 35 at 21, a quick calculation demonstrates an approximate average payment of $1,271 ($11,057,325.75 (settlement fund less proposed attorneys' fees and costs) divided by 8,695 (number of class members)). See ECF No. 43 at 8, 15.

Harris, Ms. Dyer and Ms. Stallworth did not sign a general release broader than the release signed by their fellow class members. Moreover, Ms. Dyer and Ms. Stallworth do not face the same type of backlash that concerned this Court in Boring; they no longer work for Wells Fargo, though they continue to work in the mortgage industry.

While some factors weigh against the requested award, other factors suggest an award that is higher than $5,000 is reasonable. Plaintiffs only negotiated the requested award after agreeing to a settlement amount. ECF No. 43-1, ¶ 13. In addition, the settlement requires Wells Fargo to pay the incentive awards, so class members will not fund the awards to Ms. Dyer and Ms. Stallworth. ECF No. 43 at 14. And, unlike the requested awards in Boring, Ko, and Harris, $15,000 is within one order of magnitude of the average class pay-out.

Based on all of these considerations, the Court finds that an enhancement award of $10,000 each is appropriate to compensate Ms. Dyer and Ms. Stallworth for the time and effort they spent in connection with this litigation and the risks they took on behalf of their fellow class members.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. For the reasons set forth in its May 12, 2014 order, the Court CONFIRMS its certification of the class for settlement purposes only.

2. The Court GRANTS final approval of the proposed settlement.

3. The court GRANTS incentive awards of $10,000 each to Ms. Dyer and Ms. Stallworth.

4. The court GRANTS an award of $3,639,465.4 in attorneys' fees. The Court DENIES WITHOUT PREJUDICE the request for expenses. If, within 10 days of the date of this order, class counsel provides documentation that sufficiently supports the claimed expenses, the Court will grant the motion for expenses and award class counsel an additional $46,309.84.

///

///

///

///

14

5. The class members who asked to opt out of the settlement are excluded from the class.

**IT IS SO ORDERED.**

Dated: October 22, 2014



_____
JON S. TIGAR
United States District Judge